ALEXANDER J. RISSOLO, JR. *v.* BETTS ISLAND
OYSTER FARMS, LLC, ET AL.
(AC 29785)

FREDERICK A. LOVEJOY *v.* ALEXANDER J.
RISSOLO, JR.
(AC 30346)

DiPentima, Alvord and Pellegrino, Js.

Argued May 21—officially released September 29, 2009

*Frederick A. Lovejoy,* pro se, the appellant (substitute defendant in the first case, plaintiff in the second case).

*John A. Milici,* with whom, on the brief, was *Donald F. Reid,* for the appellee (plaintiff in the first case, defendant in the second case).

*Opinion*

PELLEGRINO, J. This is an appeal from two matters, *Rissolo* v. *Betts Island Oyster Farms, LLC,* and *Lovejoy*

v. *Rissolo,* formally consolidated by motion on the second day of trial on November 28, 2007.[1] Both cases are essentially partition actions, with the *Lovejoy* case seeking additional relief in a count for damages for a breach of contract. The trial court ordered a partition by sale and awarded damages to Frederick A. Lovejoy, the substitute defendant in the first case and the plaintiff in the second case, from which he now appeals. We find that the trial court was not in error as claimed by Lovejoy and affirm the trial court's judgments.

The undisputed facts are that Lovejoy and Alexander J. Rissolo, Jr., the plaintiff in the first case and the defendant in the second case, are owners as tenants in common of a small triangular island located in Norwalk Harbor, in Norwalk. The island is just over one acre in size, and there exists on it two sheds and a cottage without electricity, water or a septic system. The disputed facts concerned the value of the work performed by or at the behest of Lovejoy for the maintenance and improvement of the property and for the tax benefit that the property realized through his efforts.

The court found that the physical attributes of the parcel of land in dispute made the division of it impractical and inequitable and, therefore, ordered a partition by sale. The court found that although the parties had agreed to a fifty-fifty split on the cost of improvements, a fair allocation of the sale proceeds would be 55 percent to Lovejoy and 45 percent to Rissolo to account for the improvements provided by Lovejoy. Additionally, the court determined that Lovejoy was entitled to damages in the amount of $15,350.27 for taxes averted through his efforts. The court found that no agreement existed between the parties that Rissolo would not sell

---

[1] Although subsequent encumbrancers of the property at issue were named as defendants in *Rissolo* v. *Betts Island Oyster Farms, LLC,* they are not parties to these appeals.

his one-half interest for ten years. Lovejoy has appealed from all of the court's orders.

I

On appeal, Lovejoy claims that the court improperly ruled with regard to all of its partition orders. Specifically, Lovejoy claims that the court improperly (1) ordered a partition by sale, (2) ordered a partition by sale of the entire island instead of only Rissolo's one-half interest, (3) ordered the partition by sale to be conducted via a real estate broker, (4) determined the percentages to be distributed to each party upon receiving the proceeds from the sale without knowing the sales price of the island and (5) awarded Lovejoy an additional 5 percent of the sale proceeds as his damages without considering the present day values of the renovation costs for work he performed on the island. We are not persuaded.

We start with our standard of review. "The right to partition has long been regarded as an absolute right, and the difficulty involved in partitioning property and the inconvenience to other tenants are not grounds for denying the remedy. No person can be compelled to remain the owner with another of real estate, not even if he become[s] such by his own act; every owner is entitled to the fullest enjoyment of his property, and that can come only through an ownership free from dictation by others as to the manner in which it may be exercised. Therefore the law afford[s] to every owner with another relief by way of partition . . . . *Fernandes* v. *Rodriguez*, 255 Conn. 47, 55–56, 761 A.2d 1283 (2000); see also 7 R. Powell, Real Property (2005) § 50.07 [3] [a] (right to partition is an inherent element of the tenancy in common, designed to prevent a forced continuation of shared ownership of property). To effectuate the foregoing principle, [General Statutes §] 52-495

gives discretionary authority to courts of equitable juris-
diction to order, upon the complaint of any interested
person, the physical partition of any real estate held by
tenants in common . . . . An action for partition at
common law was equitable in nature, requiring courts
to examine all relevant circumstances. . . . The deter-
mination of what equity requires in a particular case, the
balancing of the equities, is a matter for the discretion
of the trial court." (Internal quotation marks omitted.)
*Eisenberg* v. *Tuchman*, 94 Conn. App. 364, 375–76, 892
A.2d 1016, cert. denied, 278 Conn. 909, 899 A.2d 36
(2006). Accordingly, our review of a court's partition
orders is to determine whether the court abused its dis-
cretion.

"In determining whether the trial court has abused
its discretion, we must make every reasonable presump-
tion in favor of the correctness of its action. . . . Our
review of a trial court's exercise of the . . . discretion
vested in it is limited to the questions of whether the
trial court correctly applied the law and could reason-
ably have reached the conclusion that it did. . . . The
court's judgment will be interfered with only where the
partition has been made on wrong principles, or where
a clear mistake has been made, or where there is great
and evident unfairness or inequality in the division. In
other words, substantial injustice or inequality must
clearly appear, and it must be more than can be fairly
accounted for by mere difference of judgment or opin-
ion. 68 C.J.S. 123, Partition § 137 (b) (1998)." (Citation
omitted; internal quotation marks omitted.) *Eisenberg*
v. *Tuchman*, supra, 94 Conn. App. 376. With this stan-
dard in mind, we now turn to each of Lovejoy's claims
with regard to the court's partition orders.

A

We first address Lovejoy's claims that (1) the court
improperly ordered a partition by sale, (2) the partition

by sale should have been limited only to Rissolo's one-half interest in the island and (3) the court improperly ordered a public sale via a real estate broker. In *Fernandes* v. *Rodriguez*, supra, 255 Conn. 47, our Supreme Court addressed the trial court's authority in a partition matter. The court held that "in a partition action, one joint tenant or tenant in common cannot dispossess another *except* by partition in kind or partition by sale." (Emphasis in original.) Id., 54–55. Further, the court stated that "[a] court is limited to rendering a judgment of either partition in kind or by sale of the real property . . . thus terminating the ownership relationship between the parties . . . and a court is precluded from substituting its own ideas of what might be a wise provision in place of a clear expression of legislative will." (Citations omitted; internal quotation marks omitted.) Id., 57–58. Accordingly, in light of *Fernandes*, the court did not have the authority to order anything short of a full partition by sale or a partition in kind and, therefore, did not abuse its discretion when it did not order a partition by sale of only a one-half interest in the island.

In the present matter, the court found that the island is a triangular shape and just a little over one acre in size. On the island are two sheds and a cottage, but there is no electricity, running water, septic system, cable or telephone system. The island also has an erosion problem, and the only access to the island is by boat. Further, the court found that the relationship between the parties has deteriorated. "[I]n a partition action, the trial court must first consider the practicability of physically partitioning the property in question. If the trial court determines that, based upon the situation and location of the property, the size and area of the property, the physical structure and appurtenances on the property, and other factors, a physical partition of the property would not be feasible, it may then order

a partition by sale." Id., 59. On the basis of the court's findings regarding the size of the island, the amenities of the island and the relationship of the parties, we conclude that the court did not abuse its discretion when it ordered a partition by sale.

In addition, Lovejoy claims that the court abused its discretion when it ordered the sale to be handled by a private real estate broker. Our review of the record reveals that the court ordered initially that a private sale be held, allowing either party to buy the other party's interest. The court ordered that after the appraisal had been submitted, "either side [would] have the right, but not the obligation, to buy out the other side and close within sixty days of the acceptance of the appraisal by the court." Lovejoy's argument, therefore, that the court improperly ordered a public sale by a real estate broker is misplaced. He, first, was given the option to purchase the property at a private sale between the parties. It was within the discretion of the court, thereafter, to order a public sale should the parties not come to an agreement with regard to a private sale of the island. "The policy expressed in [the presumption that partition in kind is in the best interests of the owners] seems to support a court's having discretion to order a private sale after determining that partition [in kind] is not feasible. That is because a private sale, rather than a public sale, is closer in character to a partition in kind because it gives the current owners a better chance of retaining their property, which may have value to them beyond mere economics.

"Although a judicially ordered sale generally results in a public auction, there is authority from other jurisdictions that if *either authorized, or not restricted,* by statute, the court may, in the exercise of its discretion, order either a private or public sale as the best interests of the parties require, [a private sale being permitted where the court] is fully informed of the value of the

property and [has] good reasons. . . . 50A C.J.S., Judicial Sales § 17 (1997). [General Statutes §] 52-500, though not specifically authorizing private sales, similarly does not specifically restrict them." (Emphasis in original; internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 853, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001); see also General Statutes § 52-495 ("[t]he court *may* appoint a committee to partition any such property" [emphasis added]). Further, Lovejoy's contention that he never agreed to a public sale through a real estate broker lacks merit. "Section 52-500 vests with the court the discretion to order a sale at the request of any of the interested parties; it does not require a request by all of those parties." *Giulietti* v. *Giulietti*, supra, 855. In his brief, Lovejoy acknowledges that the idea of a public sale was mentioned by Rissolo during a settlement conference. Accordingly, the court, within its broad discretion, after ordering the partition by sale, had the authority to determine whether the sale would be via private sale, public sale or public auction. We conclude, therefore, that the court did not abuse its discretion when it first offered the island for private sale and then public sale via a real estate broker.

B

Lovejoy next claims that the court improperly awarded the sale proceeds to be split 55 percent to himself and 45 percent to Rissolo, without knowing the sale price of the island. Within this claim, Lovejoy argues that the additional 5 percent awarded to him by the court did not take into account the present day value of the improvements he made and work he performed on the island. He further claims that the court improperly used the actual cost of the renovations and work performed on the island instead of correctly awarding the present day value of the improvements. We disagree.

"A partition by sale, although a creature of statute, is an equitable action. See, e.g., *Fernandes* v. *Rodriguez*, supra, 255 Conn. 59. The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *Fernandes* v. *Rodriguez*, 90 Conn. App. 601, 609, 879 A.2d 897, cert. denied, 275 Conn. 927, 883 A.2d 1243 (2005), cert. denied, 547 U.S. 1027, 126 S. Ct. 1585, 164 L. Ed. 2d 312 (2006). In the present matter, the court determined that the parties had agreed to a fifty-fifty split on the cost of improvements made to the island. The court found that Rissolo did not perform any maintenance or upkeep on the island, however, leaving all the work to Lovejoy. Accordingly, the court, in its discretion, believed it unfair to divide the equity of the property equally between the parties. The court, therefore, determined Lovejoy's equitable interest to be 55 percent and Rissolo's equitable interest to be 45 percent. As the court explained in its articulation, the award differential is 10 percent.

Moreover, a partition action requires that the court balance the equities between the parties. See *Eisenberg* v. *Tuchman*, supra, 94 Conn. App. 376. This court will interfere with the trial court's judgment only if the court has partitioned the property on the basis of wrong principles, a clear mistake has been made or where there is evidence of unfairness or inequity in the division. See id. We cannot conclude that after the court reviewed all the evidence, it was a mistake or unfair to determine Lovejoy's equitable interest to be 10 percent more than Rissolo's.

Additionally, we disagree with Lovejoy's argument that a sales price had to be established before the court could determine the equitable interests of the parties. Because a partition action is an equitable action, the court has the authority to determine an unequal award

on the basis of the evidence presented, including the value of the property and the equitable interests of the parties. See *Fernandes* v. *Rodriguez*, supra, 90 Conn. App. 612 (no abuse of discretion for court to determine equitable interest in property 5 percent for one party and 95 percent for other); see also *Levay* v. *Levay*, 137 Conn. 92, 96, 75 A.2d 400 (1950) ("Although each party was the owner of an undivided one-half interest in the property, it does not follow that he or she will necessarily be entitled to equal shares of the moneys obtained from the sale. Equities must be considered . . . ."). The court in this matter had evidence as to the value of the property from an appraisal submitted by Rissolo, as well as testimony from Rissolo as to what he thought the island was worth. We conclude, therefore, that the court did not abuse its discretion in establishing the equitable interests of the parties on the basis of Lovejoy's contributions to the improvements and maintenance of the property.

We are also not persuaded by Lovejoy's claim that the court improperly used the actual cost of the renovations instead of the present day values of the renovations. The court noted in its decision that "[t]here were issues of credibility as to both parties" as well as "the absence of some records of bills, [and] the nature of submitted invoices and the like . . . ." The court noted that although there was evidence from a state certified arborist that the fair market value of the orchard on the island was $42,300, the actual cost of the trees, fencing, apiary supplies, bees, clearing of the land and the survey was $15,194.19. With regard to the work performed in the kitchen, the court commented that although there was evidence from a construction contractor that the value of the kitchen was $45,000, "the expenses submitted which could be associated with the kitchen renovation [were] incomplete or not specifically identified." "[T]he trier of fact . . . is the sole

arbiter of credibility, and thus is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *State* v. *Ryder*, 114 Conn. App. 528, 538–39 n.4, 969 A.2d 818, cert. granted on other grounds, 292 Conn. 919, 974 A.2d 723 (2009). Again, we cannot conclude that the award of a 10 percent differential to Lovejoy did not compensate him for the value of the trees and the renovations to the kitchen because the court could rely on whatever evidence it found credible. We conclude, therefore, that the court did not abuse its discretion when it fashioned its partition award to provide Lovejoy with 55 percent of the proceeds.

## II

Lovejoy next claims that the court improperly determined the breach of contract matter asserted in his counterclaim. Specifically, Lovejoy argues that the court (1) failed to find that Rissolo had agreed not to sell his one-half interest in the island for a period of ten years, (2) failed to award damages to Lovejoy for penalties and losses incurred as a result of Rissolo's breach of the ten year agreement and (3) improperly determined the amount of the averted taxes and that he was not entitled to interest on that award. We disagree.

We begin by setting forth the standard of review. "The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable

presumption must be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *Aquarion Water Co. of Connecticut* v. *Beck Law Products & Forms, LLC*, 98 Conn. App. 234, 238, 907 A.2d 1274 (2006). With this standard in mind, we now turn to Lovejoy's contract claims.

## A

Lovejoy claims that Rissolo agreed not to sell his one-half interest in the island for a period of ten years. Lovejoy relies on a letter he wrote, dated October 20, 1999, to support this claim. The October 20, 1999 letter states in relevant part: "[I]f I am successful in having Betts Island designated as farm land or in a tax appeal, you agree that any and all property tax liability that you would have owed/paid to the City of Norwalk; i.e., averted tax liability, will be paid by you for the period you are an owner of Betts Island, or for at least a period of a minimum of ten (10) years from the date of approval of the above, if you are no longer an owner, towards a rip-rap project. . . . You further agree that if you sell your interest prior to the ten (10) year period you also agree to be responsible for any penalties/losses that I may incur. . . . You understand that if you sell your interest in Betts Island to an 'outsider,' i.e., a non-family member, after a farm land classification is granted that you will be subject to a severe tax penalty. . . . After ten years have transpired there is no longer any penalty imposed as a result of the sale of farm land classified property." There is no mention in the letter that Rissolo will not sell his one-half interest for ten years. Instead, the letter specifically states: "You further agree that if you sell your interest prior to the ten (10) year period you also agree to be responsible for any penalties/losses that I may incur." The purpose of the letter was to discuss a farmland designation for the island and the possible penalties that could occur if the farmland designation was lost.

The only other documentation submitted to the court that Lovejoy relies on to support his claim that there was an agreement between the parties not to sell for ten years was an offer made by Rissolo to Lovejoy to purchase Rissolo's one-half interest in the island. Our review of these exhibits specifically, as well as the rest of the record, leads us to conclude that the court properly determined that there was no agreement. The evidence does not support a finding that there was an agreement between the parties that Rissolo would not sell his one-half interest for ten years.

B

Next, Lovejoy argues that the court failed to award him damages for penalties and losses incurred as a result of Rissolo's breach of the ten year agreement not to sell Rissolo's one-half interest in the island. As stated, the court did not find that such an agreement existed and, therefore, did not award damages on the basis of this theory of recovery. The court did find, however, that there was an agreement between the parties to share the cost of improvements and did award Lovejoy a greater percentage of the equitable interest in the property in recognition of the improvements that he provided.

C

Lovejoy also claims that the court improperly determined the amount of the taxes that were averted and that it failed to award statutory interest. We disagree.

In its response to a motion for articulation, the court found that there was a contract between the parties with regard to the averted tax liability. The court found that there was an agreement between the parties regarding payment for the averted tax liability for a period of ten years, starting in 2001. The court found that the tax designation was lost in 2007, prior to the end of the ten

year agreement, and, accordingly, Rissolo was ordered to pay $15,350.27 to Lovejoy, which the court determined to be the amount of the taxes that were averted. The court did not award interest on this amount.

Lovejoy relies on General Statutes § 37-3a (a) and states in his brief that "[t]he award of prejudgment interest is mandatory [and that] [t]he statutory language of § 37a-3a (a) clearly requires that interest be awarded in actions seeking monetary damages . . . ." Our review of § 37-3a (a) does not support his argument that the award of prejudgment interest is mandatory. General Statutes § 37-3a (a) provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, *may* be recovered and allowed in civil actions . . . ." (Emphasis added.) As this court has previously concluded, an award of prejudgment interest is discretionary, not mandatory. See *Flynn* v. *Kaumeyer*, 67 Conn. App. 100, 105, 787 A.2d 37 (2001) ("[a]n award of § 37-3a interest is discretionary"); see also *Smithfield Associates, LLC* v. *Tolland Bank*, 86 Conn. App. 14, 26, 860 A.2d 738 (2004), cert. denied, 273 Conn. 901, 867 A.2d 839 (2005).

In addition, Lovejoy claims that his calculation of the averted tax amount should have been adopted by the court despite the fact that he provided no documentation for his estimate. The court, however, relied instead on an estimate, as provided by Rissolo, of $15,350.27 and awarded that amount to Lovejoy. "The credibility of the witnesses and the weight to be accorded to their testimony is for the trier of fact. . . . This court does not try issues of fact or pass upon the credibility of witnesses." (Internal quotation marks omitted.) *Wasniewski* v. *Quick & Reilly, Inc.*, 292 Conn. 98, 103, 971 A.2d 8 (2009). We cannot conclude that the court's finding that the averted tax was $15,350.27 was clearly erroneous or that refusing to award prejudgment interest was an abuse of discretion.

## III

Lovejoy also claims that the court improperly determined that the doctrine of unclean hands did not apply to the present matter. Although Lovejoy raised this as a special defense in his answer and Rissolo addressed this special defense in his posttrial brief, we do not address this claim, as we conclude that the record is inadequate for our review.

In its memorandum of decision, the court did not address Lovejoy's special defense of unclean hands. Lovejoy filed two motions for articulation, neither of which requested an articulation as to his special defense of unclean hands. "It is well established that [i]t is the appellant's burden to provide an adequate record for review." (Internal quotation marks omitted.) *Cockayne* v. *Pilon*, 114 Conn. App. 867, 871, 971 A.2d 732 (2009). "Because the court's memorandum of decision is devoid of any findings or analysis on the issue, and because the petitioner did not seek an articulation, the record is inadequate, and we cannot review his claim." *Dawson* v. *Commissioner of Correction*, 106 Conn. App. 614, 626, 942 A.2d 519, cert. denied, 287 Conn. 909, 950 A.2d 1285 (2008); see also Practice Book §§ 61-10 and 66-5. Accordingly, we decline to review this claim.

## IV

Lovejoy's final claim is that the court improperly denied his request to amend his complaint during trial. We decline to review this claim, however, because it is briefed inadequately. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without

substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Massey* v. *Branford*, 115 Conn. App. 153, 165, 971 A.2d 838 (2009). In the present case, Lovejoy has failed to provide any analysis or legal authority with regard to his claim to support his position. He simply makes a bald assertion that courts liberally allow parties to amend their complaints. We therefore decline to review this claim.

The judgments are affirmed.

In this opinion the other judges concurred.